149 N.J. Super. 427 (1977)
374 A.2d 32
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TUNNEL CITGO SERVICES AND DE LUXE OIL CO., INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1977.
Decided May 3, 1977.
*429 Before Judges MATTHEWS, SEIDMAN and HORN.
Messrs. Miller, Hochman, Meyerson & Schaeffer, attorneys for appellants (Mr. Gerald D. Miller, on the brief).
*430 Mr. William F. Hyland, Attorney General, attorney for respondent (Mr. Jeffrey Rudin, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by HORN, J.A.D.
On August 8, 1975, as part of an ongoing investigation by the State for suspected violations of the New Jersey Motor Fuel Tax Law, investigators employed by the State Criminal Justice Division secured two search warrants authorizing them to enter and search respective premises of defendants Tunnel Citgo Services and DeLuxe Oil Co., Inc., and to seize certain records of each defendant.
Defendants moved to suppress the material seized and also for the return of said materials. At the conclusion of an evidential hearing held on the motion the judge upheld the validity of the search warrants as well as the seizures and denied the motion to suppress except as to certain enumerated items which were ordered to be returned to the respective defendants. Defendants appeal from that portion of the judge's order denying the suppression and return of various items.
Defendants contend that seizure of their records violated their Fourth Amendment rights for three reasons. The first reason asserted is that the warrants were general in describing the items to be seized. The two warrants, which are substantially identical, recite that on the respective premises are maintained:
* * * daily checkout sheets pertaining to the daily operation of [defendants], ledger cards, journals, purchase invoices for fuel, delivery tickets, bank records, accounts receivable ledgers, accounts payable ledgers, copies of corporate tax returns both state and federal, and other accounting records pertaining to the operations of [defendants] from June 1, 1972 through the present time, which are instrumentalities and evidence of crimes committed in the State of New Jersey, in violation of N.J.S. 54:39-55, N.J.S. 54:39-64(b), and N.J.S. 2A:98-1 and 2 of the laws of the State of New Jersey. *431 General search warrants are, of course, prohibited by the Fourth Amendment. Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). The burden is on defendants to establish that the warrants were not valid. State v. Gaudiosi, 97 N.J. Super. 565, 571 (App. Div. 1967). Defendants have not sustained this burden.
It is settled that the description of items to be seized need only be as specific as the circumstances will allow. James v. United States, 416 F.2d 467, 473 (5 Cir.1969), cert. den. 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970); United States v. Auterbridge, 375 F. Supp. 418 (S.D. of N.Y. 1974). The records to be seized in the case at bar were those pertaining to possible violations of the Motor Fuel Tax Law. It would have been impossible to have the warrants recite with particularity each document to be seized. This is not a case where the items to be seized are easily identifiable and distinguishable, as in a case, for example, of stolen merchandise. The nature of the items defied more particular description. See Andresen v. Maryland, supra, 96 S.Ct. at 2748-2749, n. 10; United States v. Jacobs, 513 F.2d 564, 567 (9 Cir.1974); United States v. Fuller, 441 F.2d 755 (4 Cir.1971), cert. den. 404 U.S. 830, 92 S.Ct. 73, 74, 30 L.Ed.2d 59 (1971); James v. United States, supra. The following quotation from Andresen v. Maryland, is apt:
Petitioner also suggests that the specific list of the documents to be seized constitutes a "general" warrant. We disagree. Under investigation was a complex real estate scheme whose existence could be proved only by piecing together many bits of evidence. Like a jigsaw puzzle, the whole "picture" of petitioner's false pretense scheme with respect to Lot 13T could be shown only by placing in the proper place the many pieces of evidence that, taken singly, would show comparatively little. The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession. * * * [96 S.Ct. at 2748-2749, n. 10] *432 Likewise, in the present case the investigation is somewhat complex. The government agents must establish violations by piecing together information contained in defendants' numerous records.
Defendants refer to Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), for support. In Stanford a search warrant was issued under a Texas statute to seize "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party in Texas * * *" (at 478-479, 85 S.Ct. at 508). The warrant was found to be general and hence invalid. This case is distinguishable in that it concerned First Amendment rights. The test of particularity of the warrant is much more strict when First Amendment rights are involved than in other incidents of search warrants. Stanford, supra at 485, 85 S.Ct. 506; United States v. Scharfman, 448 F.2d 1352 (2 Cir.1971), cert. den. 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); United States v. Auterbridge, supra at 419; State v. Muldowney, 60 N.J. 594, 601 (1972). Stanford has been particularly distinguished on this point  that the books were seized for the ideas they contained and hence First Amendment rights were involved. United States v. Fuller, supra at 760. In the present case no First Amendment rights were involved and hence a lesser requirement of particularity in the descriptions in the warrants is required. While writings were seized in the instant case, they concern commerce, not literature, and hence the First Amendment does not come into play. California Bankers Ass'n v. Shultz, 416 U.S. 21, 62, 94 S.Ct. 1494, 39 L.Ed. 2d 812 (1974).
We discount the holding of People v. Einhorn, 75 Misc.2d 183, 346 N.Y.S.2d 986 (Sup. Ct. 1973), which defendants claim supports their position. In that case defendant was suspected of illegally selling drugs. The court held that the description of the drugs to be seized was too broad in scope, so that in effect what could be seized under the warrant *433 lay in the discretion of the officers. In that case, to say the least, the specific items to be seized were capable of being more particularly described than those in the instant case.
Defendants' next point is that the searches were unreasonable because there was a less drastic means of obtaining the seized materials than by search warrant, i.e., by subpoena. This point is frivolous.
While the State contends that in fact in the present case it could not have subpoenaed defendants' records, this issue need not be resolved, since it is clear that the so-called "less drastic means" doctrine is not applicable in the present case.
Defendants' argument under this point is adequately answered in United States v. Mfrs. Nat'l Bank of Detroit, etc., 536 F.2d 699, 703 (1976), cert. den. sub nom. Wingate v. U.S., 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 749 (1977), where appellants, including a bank, urged that they were deprived of their Fourth and Fifth Amendment rights "due to failure of the government to utilize a subpoena duces tecum or demonstrate its impracticality before applying for a warrant to search safe deposit box #127."
The court in response to this contention stated:
* * * Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime. The necessity that there be findings of probable cause as to two factors  the commission of a crime and the location of evidence  affords protection from unreasonable searches and seizures, which are the only ones forbidden by the Fourth Amendment. We are not persuaded that the contrary rule adopted by the district court in Stanford Daily v. Zurcher, 353 F. Supp. 124 (N.D. Cal. 1972), is required by either the Fourth or Fifth Amendments or the Federal Rules of Criminal Procedure. [536 F. 2d at 703]
Defendants lastly argue that even if the search warrants were valid the searches themselves were general and hence all the materials seized must be suppressed. The *434 testimony at the suppression hearing indicates that the records were kept in no particular order, necessitating a search throughout defendants' records and files in order to find the relevant records. Other than the fact that certain items were erroneously taken, defendants have not established that the searches were in fact general in nature.
So long as the searches were constitutionally authorized, as we find they were, that certain items not covered by the warrants were seized does not invalidate the searches nor classify them as general and therefore unauthorized seizures. The remedy under the circumstances is one of exclusion only. R. 3:5-7; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In the case before us the trial judge directed the return of such items. See also, Andresen v. Maryland, supra; United States v. Russo, 250 F. Supp. 55, 58 (E.D. Pa. 1966); Quandt Brewing Co. v. United States, 47 F.2d 199, 201 (2 Cir.1931). Cases cited by defendants for the contrary view do not sustain that argument by reason of the differences in facts as well as the differences in the issues.
For the foregoing reasons we find no substance in defendants' contentions that the searches and seizures were unlawful. However, the execution of the search warrants occurred in August 1975. Over 20 months have elapsed without apparent action on the part of the State. No indictments have been secured. We are not informed of any reason for the State's continued retention of the seized records. The State has failed, after defendants informed this court of its inaction, to respond to that information.
We find the State's continued retention of defendants' records under the circumstances to be unreasonable. Accordingly, we direct the return by it of all defendants' records seized in the aforementioned searches within 30 days. If the State contemplates some appropriate action and therefore desires to make copies of same within said interval, it may do so. The order below is otherwise affirmed.